## TRANSFER NO. 19.

## CAR FLOATS 40 & 42.

(Circuit Court of Appeals, Second Circuit. March 10, 1913.)

Nos. 172, 173.

COLLISION (§ 95*)—STEAM VESSELS—VIOLATION OF RULES.

A finding affirmed that a transfer tug, with a car float on each side, proceeding from Greenville channel, N. J., across Upper New York Bay to a point on East River, was solely in fault and liable for a collision between one of her tows and an outbound steamship on the west side of the ship channel, on the ground that she turned up the wrong side of the channel with the steamship in plain view, and also answered the steam-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ship's proper passing signal with a cross-signal and attempted to cross her bows.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

Appeal from the District Court of the United States for the Southern District of New York; George C. Holt, Judge.

Suit in admiralty for collision by the Compania Trasatlantica, owner of the Spanish ship Calvo, against Transfer No. 19 and Car Floats 40 and 42, with cross-libel by the New York, New Haven & Hartford Railroad Company, owner of the transfer and car floats. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 198 Fed. 568.

On appeal from decrees of the District Court for the Southern District of New York holding Transfer No. 19 solely at fault for a collision which occurred between her tow and the steamship Manuel Calvo in the upper bay of New York on February 14, 1911. The final decree assessed the libelant's damages at $20,941.91 and ordered judgment against the tug, and the two car floats which were being towed by her, for the said sum with interest and costs, amounting to $20,992.36. The New York, New Haven & Hartford Railroad Company, owner of the tug, appeals, insisting that the decrees should be modified and both the tug and the Calvo held at fault.

James T. Kilbreth, of New York City, for Transfer No. 19.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and Francis H. Kinnicut, both of New York City, of counsel), for the Calvo.

Before LACOMBE, COXE, and NOYES, Circuit Judges,

COXE, Circuit Judge. The tug concedes that she was at fault but insists that the negligence of the Calvo contributed to the collision and that the damages should be divided between them. It is not of controlling importance to determine whether the vessels were on crossing or meeting courses. When they first sighted each other they were unquestionably on crossing courses. Subsequently, and shortly prior to the collision, they may for a brief period of time have been on meeting courses. However this may be the gross negligence of the tug sufficiently accounts for the collision, and errors of judgment on the part of the steamship, assuming them to exist, should not be held to relieve the tug from the full responsibility for her acts. She was emerging from the Greenville channel destined for Oak Point, East River. Her course was perfectly plain and had she taken it and crossed over to the Brooklyn side of the bay and thence up the river there would have been no collision. Instead of doing so, she turned to the northward, after passing the red buoy, intending to go up on the extreme westerly side of the channel. This maneuver was executed with the Calvo clearly in view, bound out on the side of the channel where she had a right to be and where the transfer had no right to be. The steamer seeing that the tug was turning apparently intending to go up on the westerly side of the channel, gave one whistle and ported. Instead of answering with a similar signal, the tug blew two blasts

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and starboarded, thus heading directly for the steamer's course. We are unable to see how the steamer could guard against such erratic and wholly unexpected maneuvers as the tug engaged in. Of course, if the Calvo could have surmised that the tug intended to go up on the wrong side of the channel and not content with that violation of the rules, intended also to pass on the wrong side of the steamer, even though she had to cross her bows to get there, the steamer might have done something to avert the collision. But she did not know these things and had a right to assume that the tug would follow the rules of the road applicable to such a situation and not violate them all.

The tug is so plainly in fault and is so clearly responsible for all that occurred that it is not necessary to sift the testimony to ascertain whether the steamer was guilty of some slight negligence. Her actions were the result of the unwarrantable conduct of the tug and the incompetency of her master which sufficiently accounts for all that happened. The facts are carefully discussed by Judge Ward and it is unnecessary to reiterate what he has said upon the disputed questions of fact. It is enough that we agree with him in his findings of fact and the conclusions drawn therefrom.

The decrees are affirmed with costs,